Ruffin, Judge
 

 The case of
 
 Bland
 
 v.
 
 Ansley,
 
 (2
 
 Bos.
 
 &
 
 Pul. New Reps.
 
 331,) establishes the incompetency of
 
 Bradham
 
 upon a clear principle. The slave had been seised by the defendant under a
 
 fi. fa.
 
 as the goods of the witness, and he is offered to prove property in himself. He has a direct interest in the event; for, if successful, he pays his own judgment debt. And our statute which makes the defendant in execution liable to the purchaser, if the latter be evicted by a paramount claimant, renders the reason for excluding the witness stronger here, than it is in England. '
 

 It is unnecessary to discuss the questions, whether the conveyance to the plaintiff was fraudulent in law; and whether, by consequence, the evidence of the father’s insolvency in 1831, ought not to have been received. The judge assumed, that the deed was void as against credi-
 

 
 *518
 
 A settlement whereby the properly of a father is vested in a son, and the latter charged with the debts of the former is void as to creditors.
 

 I tors generally ; but admitting it to be so, he held, and we think properly, that it was valid as against
 
 Bradham,
 
 supposing the debt, for which the negro was sold, to have been then contracted. At the sale under execution,
 
 Bradham
 
 owned that debt; and if it existed when the deed was made to the plaintiff, he was, by his contract with old
 
 Waller,
 
 to pay it. For the purposes of this controversy, that debt must be considered as satisfied.
 
 Bradham
 
 cannot hold the estates conveyed to him, and yet go against the residue of the father’s property for the very money which constituted the consideration of the conveyance to himself.' The only question remaining, was one of fact, whether the debt to
 
 Jones existed at
 
 the time of the contract between
 
 Waller
 
 and
 
 Bradham.
 
 and so was one of those to be paid by the latter. That was left to the jury, and found affirmatively. If so found without sufficient evidence, the Superior Court might have granted a new trial. We cannot. But it is said, there was no evidence; and therefore the court erred in leaving it to the jury at all. If such were the fact, it would be error in a case where the
 
 onus probandi
 
 was on the side of the plaintiff. But we cannot take that to be the fact. It is not to bo presumed, that the judge would go out of the case made, and deal in mere abstract propositions. The record docs not contain any objection in the Superior Court, on this ground ; and it was therefore unnecessary to state the evidence relative to it.
 

 I have no doubt, however, that the debt existed in November, 18&6 ; and think it extremely probable, that all the deeds then made to
 
 Bradham
 
 and the daughters, were fraudulent against
 
 Jones,
 
 and
 
 Waller’s
 
 other creditors. It was a family arrangement in the nature of a voluntary settlement of all, or nearly all, the father’s
 
 property;
 
 and this, I say, notwithstanding the price agreed to be paid by
 
 Bradham
 
 for what was then conveyed to him. If that price wex*e the full value, yet his embarrassments, which plainly appear, shew his responsibility to be an inadequate security to the creditors. A debtor cannot substitute for the solid value of his pro-
 
 *519
 
 derty, the colorable provision of an insolvent’s engage- . merit to pay the debts. The presumption is very strong, . that the object of the sale under execution, was to supply this defect, and that in this object all the parties con-civrred. The debt was in the name of
 
 Jones,
 
 who had a right to treat the deeds as nullities
 
 ; specie
 
 was demanded, to keep off other bidders;
 
 Bradham
 
 purchased, but, instead of taking the property, left it still with his sisters-in-law. It can hardly be doubted, that
 
 Bradham
 
 and the. plaintiff then understood each other; and that the design was, not to deprive her of the negro, but to confirm her title — she trusting to
 
 Bradham
 
 not to use his legal title to her
 
 prejudice
 
 — Bradham seems to have kept his faith until April of the next year; and then he and the present defendant commenced that course of conduct, which produced the present action. If such was the true state of facts, and
 
 Bradham
 
 was the owner of
 
 Jones’
 
 judgment, it is manifest that the last.sale was but a continuation of the first fraud ; and a court of justice can, in such case, help neither party. The law leaves them where they place themselves. Had the defence been put on that point, and the jury drawn the same inferences of fact from the circumstances which I do, the plaintiff would have been barred; because sheparticipated throughout, in each act of fraud. But the jury was not required to make such inferences, nor the court asked to instruct them upon their effect, if drawn. This court cannot, therefore, act on this part of the case ; because we cannot say how it was. or might have been answered, by evidence from the other side, if it had been relied on. Indeed, the point would not have been adverted to at all in this opinion, except for the wish not to be misunderstood. This construction of the acts of the parties, seems to us to be so obvious, as to induce the belief that it will be deemed the natural one by all other persons ; and if no notice had been taken of it, it might be supposed the court meant to approve and support such dealings. But the decision steers clear of the point, which is not open to this court.
 

 Neither party to a fraudulent conveyance can he aided by a court of justice.
 

 Points which were ^-iai*ancf if°taken might then have j^ot^r'exa-mined on appeal,
 

 Per Curiam. — Judgment aeeirmed.